Barbour, J. (dissenting.)
The defendant does not claim that the property taken by him from the plaintiff was removed under or by virtue of any adjudication of the board of health *94 of the city of Hew York, or under any order or direction made by such board. Hor is it pretended that the dead animals in question were, when so taken from, the plaintiff’s possession, putrid, or in a state of decomposition so as to injure or endanger the public health; nor, even, that they were in such a condition that they could not have been removed by the plaintiff and converted into grease, lard oil, or stearine, before decomposition should have taken place to any dangerous, injurious, or obnoxious extent. In-other words, the defendant does not claim that any evidence was given upon the trial tending to show that the animals were, or were likely to become, a nuisance, in the condition they were in when carried away by him. But, on the contrary, he bases his justification of the alleged trespass, wholly upon the statute of the state relating to the public health of the city of Hew York, an ordinance of the mayor, aldermen and commonalty, and a direction given by one of the officers of the city inspector to the defendant's employees, to take possession of and remove the animals.
The state statute in question creates a board of health of the city of Hew York, to be composed of the mayor and common council, or any ten members thereof, sitting together as one body, and presided over by the mayor, and invests such board with all the judicial powers usually .conferred upon boards of health ; such as adjudging it to be necessary that any particular matter or thing within the city, that may be putrid or dangerous to the public health, shall be removed or destroyed ; determining, on notice of hearing to the party interested, that any business, trade, or profession, carried on by any person in the city, is detrimental to the public health, and to make its final and conclusive order thereupon, &c. (2 R. S. 5th ed. p. 1, §§ 1, 2 ; p. 15, §6) p. 13, § 1, subd. 3.) Another part of the statute, being that portion of it which is more particularly relied upon by the defendant, authorizes and empowers the mayor, aldermen, and commonalty of the city of Hew York, (that is, the corporation known by that name, and not the board of health,) “ to make and pass all such by-laws and ordinances as they shall, from time to time, think necessary *95 and proper for the preservation of the public health of said city, and also for the abatement and removal of all and every nuisance in said city, and for compelling the proprietors or owners of the lot or lots upon which the same may be, to abate and remove the same.” (Id. p. 13, § 2.)
The ordinance of the corporation enacts and declares, that the city inspector shall cause all putrid and unsound beef, pork, fish, hides or skins, all dead animals, and every putrid, unsound, or unwholesome substance, found in any street or other place in the city, to be forthwith removed and disposed of, by removal beyond the limits of the city, or otherwise, so as most effectually to secure the public health.” (Vol. Ord’s of N. Y. p. 158, §7.)
The question for us to determine, as I understand it, is, whether this act of the legislature' and the corporation ordinance, legally empowered the officer of the city inspector to take possession of, and remove, the animals, or direct the defendants to do so ; for, unless such statute and ordinance, and the act of the officer, constituted that “due process of law” which is contemplated in and by the constitution of this state, (Const. art. 1, § 6,) the defendant is without justification and is a trespasser.
The highest courts of this, as well as our sister states, in numerous decisions, have held that the legislature may create boards of health, and invest them with full power to adjudicate upon and condemn, and compel the removal- or other disposition of property, which, in their judgment, may endanger the public health; and that the adjudications and decisions of. such tribunals in regard to matters of which they have so been vested with jurisdiction, are final and conclusive, and justify their officers in carrying the same into effect. It may be considered as settled, therefore, that the decisions of those tribunals, and the proceedings had thereunder, constitute that due process of law of which the constitution speaks. But, I know of no method, other than such adjudication by a competent tribunal, whereby a person can, legally, be deprived of his property without his own consent, unless it shall be taken for *96 public use. Chancellor Kent, in treating of this constitutional provision, says : “ The words, by the law of the land, as used originally in magna charta, in reference to this subject, áre understood to mean due process of law, that is, by indictment or presentation of good and lawful men; cand this/ says Lord Coke, 1 is the true sense and exposition of those words.’ The better and larger definition of due process of law, is, that it means law in its regular course of administration through courts of justice.” (1 Kent’s Com. 612, § 13 and n.) Indeed, the rule in this regard is too well settled to require discussion.
It is hardly necessary to consider the question, whether the legislature can invest a municipal or other corporation, not being a natural person, with judicial powers ; it is sufficient that they have not attempted to do so in the statute referred to. The judicial powers, those powers which enable a court to adjudicate upon existing facts and cases, and to apply the remedy in each distinct and several case, as the law and the necessities of the public require, are conferred by the act upon the board of health; while, so far, at least, as concerned this suit, the corporation of New York is clothed with legislative authority, merely; that is, authority to pass by-laws and ordinances, (applicable, however, only, to classes of cases thereafter to arise,) for the purpose of so regulating the uses of property that it shall not create nuisances, and become dangerous to the health or comfort of the citizens. (See 2 Kent’s Gom. 398.) For instance, under the powers granted by the legislature, the corporation was probably authorized to pass a by-Iaw,"or ordinance, if not unreasonable in its character, forbidding, under a penalty, to be enforced by a court of justice, the bringing of any dead animal into the city, or slaughtering one within its limits. But the statute does not, in terms, empower the corporation to declare the forfeiture of any property, or to direct the removal of it from the city, unless the same shall be a public nuisance ; (see 4 R. S., 5th ed. pp. 13, 14, §§ 2, 3;) which, as we have seen, is not claimed in regard to the subject matter .of this action; and, I may add, in passing, that this power to compel the removal of nuisances, could not *97 have been given for the purpose of protecting the persons employed in such removal, inasmuch as every man is justified in abating a public nuisance, but, only, in order that the corporation might impose the duty of performing such abatement upon such officers as should be designated for that purpose.
Boom v. The City of Utica, (2 Barb. S. C. Rep. 104,) was an action brought to recover damages occasioned by the alleged conversion of the plaintiff’s house into a small-pox hospital, under the direction of the common council. The court, ¡in deciding that the corporation had no legal right thus to dispossess the owner, say : “ We do not mean to deny the largest powers, and the most liberal discretion, to boards of public health, duly and legally constituted, to preserve the public health, and prevent the spreading of contagious disease, by the severest quarantine regulations. But, that question does not arise here. There is nothing in the act of incorporation, conferring on the common council any of the powers of a board of health.” * * “ The power conferred upon the common council is, merely, legislative; to make and publish ordinances, &c.” * * “ It is a mere grant of authority to adopt general rules and regulations.” (See also Dunham v. Trustees of Rochester, 5 Cowen, 462, and Clark v. Mayor of Syracuse, 13 Barb. 32.)
Assuming, for a moment, however, that the powers conferred upon the corporation in this regard, were not merely legislative, but judicial, so as to authorize it to adjudicate upon, and, by its ordinance, to direct the removal of property from the city, because dangerous to the public health; it seems to me clear that no such adjudication had been had in relation to the animals embraced in this suit. For, not only is the ordinance of the corporation, a legislative act, a mere law or rule of action for the government of the city inspector in future cases, but there is no pretense that any action whatever was had by said body, touching this particular property, by way of condemnation or otherwise.
For these reasons, I am of opinion that the defendant wholly failed, upon the trial, to justify the act complained óf, and, *98 therefore, that the charge of the court, which is excepted to, was quite correct.
Although I am content to rest the decision, so far as my own opinion is concerned, upon the views above expressed, there are further questions suggested by the arguments on appeal, which it may not be amiss to consider.
An ordinance of a municipal corporation, like a statute of the state, must be construed, where its meaning is doubtful in regard to some of its provisions, whether because repugnant to the general scope and object of such ordinances, or otherwise, according to the intention of its makers ; and that is to be ascertained upon and by a consideration of the evil sought to be removed or avoided, the remedy to be applied, and the reason of such remedy. (Heydon’s case, 3 Co. Rep. 7. Purdy v. The People, 4 Hill, 384.) The guide to that intention is, in this case, found in the statute concerning the public health of the city of Hew York, which confers upon the corporation the power to pass ordinances relating to that matter, as well as in the ordinance itself, for we are bound to assume that the corporation acted honestly, and designed, in good faith, to carry into effect, by its ordinance, the intention of the legislature; and, clearly, the great object and design of the latter was to preserve and protect the public health of the city, by preventing the influx, and providing for the removal or regulation of such deleterious substances and matter, as, if left uncontrolled, would injure or endanger the public health, and nothing more. I may add, no authority to pass ordinances was given to the corporation by the statute, except such as, in their opinion, were necessary and proper for the preservation of the health of the city. Considering this, and assuming that the common council designed to pass ordinances of that character only, it is much more reasonable to believe that the words “ all dead animals," used in the ordinance in question, were intended to include those animals only, which are valueless when dead to the owners, and which he has no pecuniary interest in removing, such as horses, dogs, &c. than it is to suppose the mayor and common council designed to cover, by these terms, all the *99 thousands of animals which are daily slaughtered in, or brought dead to, the city for the sustenance of its inhabitants, and to make it the imperative duty of the city inspector to seize every one of those animals ; and that, too, without having previously passed any ordinance forbidding the killing of animals in the city, or the bringing of dead ones into it. It seems to me, therefore, that the ordinance in question could not have been intended by its makers to include dead animals of the-description of those embraced in the complaint; animals of very considerable value, and in the removal of which by himself, before decomposition should have commenced, the owner was pecuniarily interested to such an extent as to render it in the highest degree improbable that any action in that regard, on the part of the city authorities, would be necessary.
Even if this were otherwise, however; if it could be assumed that the mayor and common council designed to include all dead animals, of every description, in the direction to the city inspector, which is contained in the ordinance, or even animals like those in question, which are valuable to the owner for lawful and proper purposes, and which he is pecuniarily interested in so appropriating, I should have no hesitation in holding that such ordinance was unreasonable, and not within the powers conferred by the statute, and, therefore, to that extent, at least, void. For, to be valid, an ordinance or by-law of a municipal corporation'must be not only conformable to its charter or the statute conferring its authority, but it must also exhibit a reasonable execution of such powers. (2 Kyd on Corp. 107. Dunham v. Trustees of Rochester, 5 Cowen, 462.) The words “ such by-laws and ordinances as they shall think necessary and proper,” imply a direction to exercise a sound and prudent judgment, and restrict the common council to the enactment of such by-laws and ordinances only, as shall be reasonable and best calculated to effectuate the grand design and object of the statute; that is, to preserve the public health. In the case last cited, although the corporation of Rochester had been empowered by the act of the legislature, in terms, “ to make such prudential bylaws, rules and regulations as they, from time to *100 time, should deem meet and proper relative to taverns, gin-shops and huckster shops, and relative to anything whatever that might concern the good government of the village,” yet, the Supreme Court held that a hy-law requiring grocers, hucksters and .victuallers to take out licenses from the trustees, was unreasonable, and, therefore, inoperative, because in restraint of trade. If, then, a by-law which is clearly authorized by the strict letter of the statute is unreasonable and void because it is in restraint of trade, how can we uphold a corporation ordinance which not only prevents the owner from selling his property for legitimate and proper purposes, to a soap boiler or candle maker, as in .the case before us, but actually divests him of his possession; and that, too, by a mere direction to one of its own officers, and without making any provision for the return of such property to the owner, either within or beyond the city limits, or even for giving him such information touching the place to which it has been, or is to be, conveyed, as will enable him to recover it ?
I think the judgment appealed from should be affirmed.
New trial granted.